UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10564-GAO

ROBERT NOBLE and BEVERLY NOBLE,
Plaintiffs,

v.

WHEATON VAN LINES, VANLINER INSURANCE COMPANY,
and WALKERLY MOVING & STORAGE, INC.,
Defendants.

OPINION AND ORDER
August 17, 2010

O'TOOLE, D.J.

Beverly and Robert Noble (collectively, the "Nobles") seek to recover against Walkerly Moving and Storage, Inc. ("Walkerly"), Wheaton Van Lines ("Wheaton"), and Vanliner Insurance Company ("Vanliner") (collectively, the "defendants") for damage caused to their household goods during transport from their home in Chagrin Falls, Ohio to a storage facility in Lincoln, Rhode Island. The Nobles assert claims under the Carmack Amendment, 49 U.S.C. § 14706, and Massachusetts state law. The defendants have all moved for summary judgment on the grounds (1) that the Nobles failed to "make a claim for payment of a specified and determinable amount of money," a condition precedent to recovery under the Carmack Amendment and (2) that the state-law claims are either preempted or inadequately pled.

I.  **Statement of Undisputed Facts**

The following is a statement of undisputed facts except as otherwise noted.

In the summer of 2006, Beverly and Robert Noble moved from their home in Chagrin Falls, Ohio to a condominium in Charlestown, Massachusetts. They hired Walkerly to move some of their household goods in July 2006. Certain goods were damaged during this move. After receiving a complaint from the Nobles, Walkerly faxed them a claim form. The Nobles returned to Walkerly "a completed claim form which did not specifically state the exact monetary amount [they] claimed but did set forth what items were damaged." (Pls.' Opp'n to Def. Walkerly Moving & Storage, Inc.'s Mot. for Summ. J. Ex. 1, ¶ 6 [hereinafter Walkerly Opp'n].) Without seeking more specific damage information from the Nobles, Walkerly voluntarily settled the claim.

The Nobles had left furniture, framed art and photographs, personal libraries, and other household items in their Ohio home so that it would look occupied until sold. When the house was sold, the Nobles again hired Walkerly in October 2006 to ship their remaining household goods to the storage facility in Lincoln, Rhode Island.

Between the July and October 2006 shipments, Walkerly entered into an agency agreement with Wheaton under which Walkerly was appointed to "represent [Wheaton] exclusively with respect to shipments in interstate commerce." (Walkerly Moving & Storage, Inc.'s Statement of Undisputed Material Facts Ex. E, § I [hereinafter Walkerly SOF].) Walkerly registered the Nobles' move with Wheaton as required by the agency agreement on October 20, 2006. Wheaton cancelled the move a week later, but Walkerly went ahead and moved the Nobles' goods.

On October 31, 2006, Walkerly prepared and Beverly Noble signed a Wheaton World Wide Moving Combined Uniform Household Goods Bill of Lading and Freight Bill Order (the "Wheaton Bill of Lading") for the move from Ohio to Rhode Island. Walkerly employees loaded

the remaining household goods onto a Walkerly truck. The goods were delivered to the Rhode Island storage facility on or about November 9, 2006. Walkerly and Wheaton dispute whether Walkerly transported the goods as Wheaton's agent or under its own interstate motor common carrier authority, but the dispute does not preclude resolution of present motions.

Upon delivery, the Nobles discovered that some of their household goods had been damaged. They allege that the goods had not been properly wrapped, had been exposed to the weather, and had been transferred into a second truck with an improvised top. Beverly Noble contacted Walkerly to complain. As with the July 2006 moving mishap, Walkerly faxed her a blank claim form. This form bore the Vanliner logo and was entitled "Presentation of Claim for Loss and Damage Under Agent's Authority" (the "Vanliner Claim Form"). This form had space for the shipper to provide the "original cost" and "estimated cost of repairs/amount claimed" for all damaged goods. (Id. Ex. I.) On or about December 20, 2006, Beverly Noble returned the form to Walkerly, but "did not include an exact amount of money for each item in that claim . . . ." (Walkerly Opp'n Ex. 1, ¶ 18.) The Nobles were not contacted by Walkerly for additional information or to indicate that the form was incomplete. In fact, the Nobles received no response from Walkerly. Walkerly soon went out of business.

Having not heard from Walkerly, the Nobles contacted Wheaton in April 2007 to file a claim. Wheaton sent them a blank "Wheaton World Wide Moving Verified Statement of Claim for Lost or Damaged Goods" (the "Wheaton Claim Form"). The Nobles contend that Wheaton did not inform them that an exact dollar amount was required; however, the Wheaton Bill of Lading incorporates by reference Wheaton's tariff, which provides that a claim cannot be voluntarily paid unless the shipper submits a written claim "making claim for the payment of a specified or determinable amount of money." (Reply of Def., Wheaton Van Lines, to Pls.' Opp'n

3

to Def.'s Mot. for Summ. J. Ex. 2, § 1(b).) The form also asked the shipper for the "original cost" of and "amount claimed" in damages for each item. (Statement of Undisputed Material Facts of Def., Wheaton Van Lines Ex. O [hereinafter Wheaton SOF].) When the Nobles returned the form, it did not contain either the original cost and amount claimed in regard to damaged goods. On September 6, 2007, Wheaton denied the Nobles' claim because there was "no record of the damage occurring while in transit," as opposed to after delivery to the Rhode Island storage facility. (Pls.' Opp'n to Def. Wheaton Van Lines' Mot. for Summ. J. Ex. H [hereinafter Wheaton Opp'n].)

Vanliner is an insurance company specializing in insuring interstate motor carriers, including Walkerly. On or about April 2, 2008, the Nobles' attorney sent a letter to Vanliner detailing their claim against Walkerly. This letter was Vanliner's first notice of the Nobles' claim. On April 18, 2008, Vanliner denied the claim because federal law holds the carrier under whose bill of lading a shipment is transported responsible for the loss and Wheaton issued the bill of lading.

In the fall of 2009, as part of their answers to interrogatories in this case, the Nobles produced a spreadsheet identifying the household goods allegedly damaged during transport. The spreadsheet includes columns for information concerning the purchase price of, a description of the damage to, and the replacement cost of more than forty-five goods. The spreadsheet however merely approximates the purchase price of each item and provides the replacement cost of only four goods.

## II.    Carmack Amendment (Count I)

Count I presents a claim for damages under the Carmack Amendment against all defendants. The Carmack Amendment claim against Vanliner fails as a matter of law because

Vanliner is an insurance company not a carrier. See 49 U.S.C. § 14706(d)(1), (2) (permitting civil actions to be brought against the "delivering carrier" or the "carrier alleged to have caused the loss"). Walkerly and Wheaton assert that the claim cannot succeed because the Nobles failed to comply with the minimum filing requirements set forth in 49 C.F.R. § 370.3(b), a condition precedent to bringing suit under the Carmack Amendment. The Nobles counter that their claims pass muster under § 370.3(b) or, alternatively, that their failure to meet these regulatory requirements can be excused. Each argument is addressed in turn.

    A.    <u>Whether the Nobles' Claims Complied with the Minimum Filing Requirements of § 370.3(b)</u>

The threshold question is whether the Vanliner Claim Form, the Wheaton Claim Form, or the spreadsheet submitted with the answers to interrogatories comply with § 370.3(b). That regulation, in pertinent part, requires the shipper to file:

> A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) . . . within the time limits specified in the bill of lading or contract of carriage or transportation and:
>
> (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property,
>
> (2) Asserting liability for alleged loss, damage, injury, or delay, and
>
> (3) Making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage; Provided, however, That where claims are electronically handled, procedures are established to ensure reasonable carrier access to supporting documents.

49 C.F.R. § 370.3(b).[1] The Wheaton Bill of Lading provides nine months to file a claim. Walkerly and Wheaton argue that the Nobles never made "a claim for the payment of a specified or determinable amount of money" as required.

The Nobles concede that neither the Vanliner Claim Form nor the Wheaton Claim Form satisfy this requirement. Both claim forms provided space to indicate the "amount claimed," but the Nobles' completed forms "did not specifically state the exact amount [they] claimed." (Walkerly Opp'n Ex. 1, ¶ 18; Wheaton Opp'n Ex. J, ¶ 6.) Nor did the claim forms supply information from which the amount claimed could be determined.

Nevertheless, the Nobles argue that the spreadsheet satisfies this filing requirement. They point to 49 C.F.R. § 370.9(b), providing that damages for irreplaceable goods are determined by "the original costs, augmented by a factor derived from a consumer price index, and adjusted downward by a factor depreciation over average useful life." While the argument is muddled, the Nobles seem to suggest that the spreadsheet permits a determination of damages under § 370.9(b) because it indicates that the goods were irreplaceable and contains their purchase price.[2]

This argument falters for two reasons: First, the spreadsheet does not contain the actual purchase prices, but merely approximates the purchases prices. (See Walkerly SOF Ex. K (noting that a "framed single yellow flower print" was purchased for "about $350").) A calculation under § 370.9(b) would therefore only approximate the amount claimed. "[E]stimations and approximations [are] insufficient to meet the specific or determinable element of the minimum filing requirements." McLaughlin Transp. Sys., Inc. v. Rubinstein, 390 F. Supp. 2d 50, 59 (D.

---

[1] Identical requirements are contained in Wheaton's tariff, which is incorporated by reference into the Wheaton Bill of Lading.

[2] Determinable "means an amount determinable, as a matter of mathematics, from a perusal of the documents submitted in support of the notice of claim." Bobst Div. of Bobst Champlain, Inc. v. IML-Freight, Inc., 566 F. Supp. 665, 669 (S.D.N.Y. 1983).

Mass. 2005). Second, the Nobles did not produce the spreadsheet until the fall of 2009, or more than two years after the expiration of the nine-month claim period provided by the Wheaton Bill of Lading.

In sum, the Nobles did not make a timely claim "for the payment of a specified or determinable amount of money" as required by 49 C.F.R. § 370.3(b).

### B.     Whether the Nobles Can be Excused from Complying with the Minimum Filing Requirements of § 370.3(b)

The Nobles contend that even if they did not file a proper claim, their failure should be excused. Failure to comply with the minimum filing requirements can be excused "where conduct on the part of the carrier misled the shipper into believing that the filing of a timely written claim was unnecessary." Nedlloyd Lines, B.V. Corp. v. Harris Transp. Co., 922 F.2d 905, 909 (1st Cir. 1991). Because the Carmack Amendment seeks to promote uniformity, Rini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir. 1997), excusing the shipper's non-compliance with the minimum filing requirements "should not be lightly found," Bobst Div. of Bobst Champlain, Inc. v. IML-Freight, Inc., 566 F. Supp. 665, 669 (S.D.N.Y. 1983).

The Nobles do not and could not argue that Walkerly and Wheaton misled them into believing that filing a claim was unnecessary as this exception explicitly requires. Instead, they advance four arguments as to how Walkerly and Wheaton misled them into believing that the claims filed were adequate. Although it is unclear whether this exception covers such an argument, see R.T.A. Corp. v. Consol. Rail Corp., 594 F. Supp. 205, 211 (S.D.N.Y. 1984) (rejecting the argument that the "defendant owed a duty to the plaintiff to inform it that the . . . letter was legally insufficient as a notice of claim"), that question need not be resolved here because no solace can be found in the four arguments advanced by the Nobles.

7

First, the Nobles assert that this exception applies because Walkerly and Wheaton did not independently investigate the value of the damage to their household goods as required by 49 C.F.R. § 370.3(d).[3] Though unclear how a failure to investigate could have misled the Nobles as to the adequacy of their claim, it is not necessary to dwell on that point. Section 370.3(d), by its own terms, does not relieve shippers of their obligation to present a written claim for payment of a specified or determinable amount. That regulation provides that even when an independent investigation occurs, the carrier "shall not . . . voluntarily pay a claim . . . unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed . . . ." Id.

Second, the Nobles contend that this exception applies because Walkerly and Wheaton did not instruct them to obtain an appraisal, which they posit was the only way to ascertain the damage to their artwork and items of historical value. This argument stumbles out of the gate. The Wheaton tariff, incorporated by reference into its Bill of Lading, informed the Nobles of their obligation to make a "claim for the payment of a specified or determinable amount of money." (Wheaton SOF Ex. M, at 2.) Having been informed of their obligation, the Nobles offer no explanation as to why Walkerly or Wheaton would have a duty to inform them how to satisfy their obligation. Especially where, as here, the Nobles already knew how to satisfy their

---

[3] Section 370.3(d) states:

> Whenever a claim is presented against a proper carrier for an uncertain amount, such as "$ 100 more or less," the carrier against whom such claim is filed shall determine the condition of the baggage or shipment involved at the time of delivery by it, if it was delivered, and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. It shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section.

obligation. The Nobles indicated on the Vanliner Claim Form that they were "schedul[ing] appraisals." (Walkerly SOF Ex. I, at 4.)

The Nobles next contend that the exception applies because neither Walkerly nor Wheaton requested any additional information as required by 49 C.F.R. § 370.5(a).[4] Section 307.5(a) recognizes that a proper claim may not contain sufficient information to resolve the claim, see Molloy v. Allied Van Lines, Inc., 267 F. Supp. 2d 1246, 1254 (M.D. Fla. 2003); therefore, "upon receipt in writing or by electronic transmission of a *proper claim*," the carrier has an obligation to request any "additional documentary evidence or other pertinent information" necessary to process the claim, 49 C.F.R. § 370.5(a) (emphasis added). Because the Nobles never filed a "proper claim," this regulation does not apply.

Finally, the Nobles contend that this exception applies because Walkerly's voluntary payment on their July 2006 claim, which also did not make a claim for a specific amount of money, led them to believe that specificity either was not required or would not be insisted upon. Put another way, the Nobles argue that Walkerly's departure from the normal claims processing practice in July 2006 misled them into believing that their December 2006 claim did not have to meet the specificity requirement. That general argument might be availing, see, e.g., Perini-N. River Assocs. v. Chesapeake & Ohio Ry. Co., 562 F.2d 269, 274 (3d Cir. 1977) (holding that the carrier's "departure from its normal practice of forwarding claim forms and copies of the damage

---

[4] Section 370.5(a) provides:

> Each carrier shall, upon receipt in writing or by electronic transmission of a *proper claim* in the manner and form described in the regulations in the past, acknowledge the receipt of such claim . . . . The carrier shall indicate in its acknowledgment to the claimant what, if any, additional documentary evidence or other pertinent information may be required by it further to process the claim as its preliminary examination of the claim, as filed, may have revealed.

9

report" warranted excusing the shipper's failure to file a proper claim), except that the Nobles' evidence does not establish a departure from the normal claims processing practice.

Carriers can voluntarily pay claims seeking payment of a specified *or* determinable amount of money. 49 C.F.R. § 370.3(b). All Beverly Noble's affidavit establishes is that the July 2006 claim "did not specifically state the exact monetary amount [] claimed." (Walkerly Opp'n Ex. 1, ¶ 18.) Her affidavit gives no indication as to whether the July 2006 claim was accompanied by any supporting documents from which the amount claimed could be determined. Because the Nobles have not "proffer[ed] admissible evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition," Gorski v. N.H. Dep't of Corrs., 290 F.3d 466, 475-76 (1st Cir. 2002), their argument must be rejected.

In sum, the Nobles have offered no evidence as to how the defendants' actions misled them into believing that they had filed an adequate claim. The Nobles' failure to "mak[e] claim for the payment of a specified or determinable amount of money" compels entry of summary judgment on Count I in favor of the defendants.

### III.    State-Law Claims Against Walkerly (Counts II-V)

With limited exceptions, the Carmack Amendment provides the exclusive cause of action against a carrier for loss or damage to goods that occurred as a result of interstate transport. See Rini, 104 F.3d at 506. "[A]ll state laws that impose liability on carriers based on the loss or damage of shipped goods are preempted" by the Carmack Amendment. Id. Walkerly argues that Counts II-V, alleging negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Massachusetts General Laws chapter 93A, are preempted.

Because the Nobles' state-law claims primarily allege that their household goods were damaged as a result of Walkerly's failure to properly wrap them (in addition to its failure to

10

inventory the goods and use of an ill-equipped truck),[5] the Nobles suggest that their state-law claims fall outside the preemptive scope of the Carmack Amendment since the claims rest not on damage caused *during* transportation, but on damage caused *before* transportation. This argument is factually puzzling because even if the actual wrapping occurred before transport, the damage presumably occurred when the improperly wrapped goods bounced around during transport. Whether the loss or damage occurred during packaging, transport, or unloading is, moreover, irrelevant as all are vital steps in the transportation process. See id.; see also Glass v. Crimmins Transfer Co., 299 F. Supp. 2d 878, 887 (C.D. Ill. 2004) (finding state-law claims based upon damage occurring in carrier's storage facility prior to being moved to be preempted by the Carmack Amendment). Counts II-V fall squarely within the preemptive scope of the Carmack Amendment.

The Nobles nevertheless contend that a dispute of fact precludes resolution of the preemption issue. Preemption, according to the Nobles, turns on whether Walkerly was Wheaton's agent, a fact currently disputed by those parties. The Nobles argue that if Walkerly was not Wheaton's agent, Walkerly would not be entitled to preemption under the Carmack Amendment because it did not issue a bill of lading. Put another way, the Nobles appear to believe that the Carmack Amendment and by extension its preemptive force apply only to carriers issuing a bill of lading. The Amendment itself belies their argument. It states: "Failure to issue a receipt or bill of lading does not affect the liability of a carrier." 49 U.S.C. 14706(a)(1); see also Kellaway Intermodal & Distribution Sys., Inc. v. Gillette Co., 578 F. Supp. 2d 304, 311 (D. Mass. 2008) ("[N]othing in the Carmack Amendment requires a carrier to issue a bill of lading."). Therefore, even though Walkerly did not issue a bill of lading, any such failure would

---

[5] In their opposition memorandum, the Nobles suggest that the state-law claims also rest on Walkerly's false representations that it was acting as an agent of Wheaton. This fact is neither alleged in the complaint nor supported by the Nobles' Concise Statement of Material Facts.

not affect the applicability of the Carmack Amendment or its preemptive force. See also Gendler v. All Pro Van Lines, Inc., 464 F. Supp. 2d 925, 930 (D. Ariz. 2005) (applying similar reasoning).

Summary judgment shall enter on Counts II-V in favor of Walkerly.

### IV.     State-Law Claims Against Vanliner (Counts V and VI)

Counts V and VI allege that Vanliner engaged in unfair and deceptive practices in violation of Massachusetts General Laws chapters 93A and 176D, respectively. Vanliner is correct that no private cause of action exists under chapter 176D. Thorpe v. Mut. of Omaha Ins. Co., 984 F.2d 541, 544 n.1 (1st Cir. 1993). But alleged violations of chapter 176D, which defines unfair claim settlement practices in the insurance industry, is evidence of an unfair business practice under chapter 93A. Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 35 (1st Cir. 2007). As a prerequisite to suit under chapter 93A, however, a plaintiff must submit a demand letter "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Mass. Gen. Laws ch. 93A, § 9(3). Vanliner argues that the Nobles' demand letter fails to describe any unfair claim settlement practices committed by it.

Under Massachusetts law, a claimant cannot bring a direct lawsuit against an insurance company for the actions of the insured. See Metro. Prop. & Cas. Ins. Co. v. Shan Trac, Inc., 324 F.3d 20, 23 (1st Cir. 2003). Consequently, Vanliner correctly notes that the demand letter would need to describe its, not Walkerly's, unfair practices. The Nobles allege in their opposition memorandum that Vanliner failed to respond to their claim submitted to Walkerly, failed to investigate that claim, and failed to effectuate a prompt settlement of that claim, but none of these insurance practices are mentioned in the demand letter (or the amended complaint or statement of facts for that matter). The demand letter alleged only that Walkerly failed to

properly wrap and inventory the goods and transported the goods in an ill-equipped truck. Failure to send an adequate demand letter is fatal to the Nobles' chapter 93A claim.

Summary judgment shall enter on Count V and VI in favor of Vanliner.

## V. Conclusion

For the foregoing reasons, the defendants' Motions for Summary Judgment (dkt. nos. 27, 29, & 35) are GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge